

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 1, 1974

The Honorable Fred Wendorf
Chairman
Texas Antiquities Committee
Box 12276, Capitol Station
Austin, Texas 78711

Opinion No. H- 250

Re: Responsibilities of Texas
Water Development
Board under Texas
Antiquities Code

Dear Dr. Wendorf:

You have requested our opinion on two questions:

1) Does the Texas Antiquities Code impose upon the
Texas Water Development Board a responsibility
to study, investigate, salvage or otherwise amelio-
rate the destructive impact reservoir projects it is
funding will have on the archeological and historical
resources they will inundate?

2) Does the current General Appropriations Act
permit the Water Development Board to expend
funds for the purpose of studying and investigating
the archeological and historical sites in a particular
reservoir prior to their inundation and destruction?

Your questions have been prompted because archeological and histo-
rical sites have been located in an area where a large reservoir is to be
constructed by a local municipal water authority with funds to be loaned it
by the Water Development Board. In connection with your questions General
Counsel for the Board has asked a related question, viz.:

3) "Is a political subdivision which has been otherwise
authorized to construct a dam required as a condition
of impoundment to obtain a permit from the Texas Anti-
quities Committee if the impoundment will cover arch-
eological sites?"

We will first focus our attention on this third question because our answer to it will clarify the responsibilities of the Water Development Board about which you are primarily concerned.

The purpose of the Texas Antiquities Code, Article 6145-9, Vernon's Texas Civil Statutes, is clearly set out in § 2 which provides:

> "It is hereby declared to be the public policy and in the public interest of the State of Texas to locate, protect, and preserve all sites, objects, buildings, pre-twentieth century shipwrecks, and locations of historical, archeological, educational, or scientific interest . . . in, on, or under any of the lands in the State of Texas. . . ."

Section 6 of the Antiquities Code provides:

> "Sec. 6. All . . . sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest . . . that are located in, on or under the surface of any lands belonging to the State of Texas or by any county, city, or political subdivision of the state are hereby declared to be State Archeological Landmarks and are the sole property of the State of Texas and all such sites or items located on private lands within the State of Texas in areas that have been designated as a 'State Archeological Landmark' as hereinafter provided, may not be taken, altered, damaged, destroyed, salvaged, or excavated without a permit from, or in violation of the terms of such permit of, the Antiquities Committee." (emphasis added)

Section 10 provides:

> "Sec. 10. The Antiquities Committee shall be authorized to issue permits to other state agencies or

> institutions and to qualified private institutions,
> companies, or individuals for the taking, salvaging,
> excavating, restoring, or the conducting of scien-
> tific or educational studies at, in, or on State
> Archeological Landmarks as in the opinion of the
> Antiquities Committee would be in the best interest
> of the State of Texas. . . . <u>No person, firm, or
> corporation shall conduct any such operations on any
> State Archeological Landmark herein described with-
> out first obtaining and having in his or its possession
> such permit at the site of such operation, or conduct
> such operations in violation of the provisions of such
> permit.</u> " (emphasis added)

Section 17 provides:

> "Sec. 17. Any person violating any of the pro-
> visions of this Act shall be guilty of a misdemeanor,
> and upon conviction shall be punished by a fine of not
> less than Fifty Dollars ($50.00) and not more than One
> Thousand Dollars ($1,000.00) or by confinement in jail
> for not more than thirty (30) days, or by both such fine
> and confinement. "

While the syntax used in § 6 of the Antiquities Code is somewhat unclear, we think it makes sense if read as follows:

> "All . . . sites, objects, buildings, artifacts,
> implements, and locations of historical, archeological,
> scientific, or educational interest . . . that are located
> in, on or under the surface of any lands [owned by] the
> State of Texas or by any county, city, or political sub-
> division of the state are hereby declared to be State
> Archeological Landmarks and are the sole property
> of the State of Texas and [no] such sites or items [in-
> cluding those] located on private lands. . . as here-
> after provided, may . . . be taken, altered, damaged,
> destroyed, salvaged, or excavated without a permit
> from, or in violation of the terms of such permit of,
> the Antiquities Committee. "

Section 7 of the Antiquities Code permits the designation of "State Archeological Landmarks" on private land, if the recordable, written consent of the owner has been obtained. Section 5 of the Antiquities Code declares that all sunken or abandoned pre-twentieth century ships and wrecks of sea and all contents thereof and treasure imbedded in the earth "located in, on or under the surface of lands belonging to the State of Texas, including its tidelands, submerged lands and the beds of its rivers and the sea within the jurisdiction of the State of Texas . . . are the sole property of the State of Texas <u>and may not be taken, altered, damaged, destroyed, salvaged or excavated without a contract or permit of the Antiquities Committee.</u>" (emphasis added)

The peculiar wording of § 6 of the Antiquities Code has suggested to some that its "taken, altered, damaged, " etc., clause applies only to those archeological landmarks found on private lands. Support for this proposition is claimed from the legislative failure to include "agency" within the § 10 command that "No person, firm, or corporation shall conduct any such operations. . . without first obtaining. . . such permit . . . ." But we believe the Legislature intended to guard and protect archeological landmarks found on publicly owned property with the same vigor as those found on private land and that it intended to forbid <u>unpermitted</u> destruction or alteration of such landmarks by government employees or officers, as well as by private persons.

The Antiquities Committee is specifically authorized by § 10 of the Antiquities Code to issue permits to state agencies. Section 19 of the Code authorizes and directs the chief administrative officers of all state agencies to "cooperate and assist" in carrying out the intent of the Act. Such language, in this case, imports a mandatory duty. See 53 Tex. Jur. 2d Statutes § 18. Compare Attorney General Opinions M-851 (1971), M-840 (1971), M-688 (1970), M-394 (1969) and V-293 (1947).

It is clear from the § 5 provisions regarding shipwrecks and treasure found on public lands that the "taken, altered, damaged" prohibitory language in § 6 was not meant to apply <u>solely</u> to landmarks found on private property. We do not think the Legislature intended to prohibit the destruction of archeological landmarks found in riverbeds, but exclude from such

a prohibition those found on other public property, particularly when it specifically claimed them both as State property.

In our opinion, then, § 6 of the Antiquities Code requires that the permission of the Antiquities Committee be obtained in the form of a permit before any site of historical or archeological interest located on public lands can be altered, damaged, destroyed, etc. When a local political subdivision plans to construct a reservoir which possibly will have a destructive impact on archeological and historical sites in the area to be inundated, it is required by § 6 to obtain a permit before it proceeds. We need not now review the standards to be followed by the Antiquities Committee when exercising its permit power.

Turning now to the responsibility of the Water Development Board, we note that it is in a position quite different from that of a local subdivision constructing a reservoir. The Water Development Board was created by Article 3, § 49c, of the Texas Constitution and is authorized to sell bonds to establish the Texas Water Development Fund which "shall be used only for the purpose of aiding or making funds available upon such terms and conditions as the Legislature may prescribe, to the various political subdivisions or bodies politic and corporate of the State of Texas . . . ." Statutory provisions dealing with the duties and powers of the Board are found in § § 11.00 et seq. of the Water Code, V. T. C. S. Under these provisions the Board's primary duty is to investigate the feasibility of water projects proposed by local political subdivisions and, if it approves them, to loan the subdivision the funds necessary for the project out of the Texas Water Development Fund.

The Water Development Board does not itself engage in the actual construction of water projects. Since the Board itself is not engaged in any construction, it would not be required by § 6 of the Antiquities Code to obtain a permit when a project it intends to fund might have an impact on archeological or historical sites. Instead the permit would have to be obtained by the local political unit actually doing the construction.

While the Water Development Board is not subject to the § 6 permit requirement, it is not without responsibility in this regard. Although primary responsibility for accomplishment of the Antiquities Code's purpose is given to the Antiquities Committee, § 19 does state:

> "The chief administrative officers of all state
> agencies are authorized and directed to cooperate
> and assist the Antiquities Committee and the Attorney
> General in carrying out the intent of this Act. "

The intent of the Act is expressly stated in § 2 to be the location, preservation, and protection of all sites or objects of historical or archeological significance in, on, or under any of the lands in Texas.

Thus, the Antiquities Code imposes on all state agencies a mandatory obligation to assist the Antiquities Committee in locating, protecting, and preserving Texas' historical and archeological resources. But nowhere in it does it specify the nature and degree of assistance necessary in order to satisfy this obligation.

The effect of the Code's silence on this matter is to vest considerable discretion in the chief administrative officer of each state agency as to the extent of assistance which will be offered the Antiquities Committee. And of course each agency chief's exercise of this discretion is strictly limited by the terms of the legislation creating his agency and by the provisions of the bills appropriating funds for its use.

As a state agency, the Water Development Board does have a responsibility to assist the Antiquities Committee in locating, protecting, and preserving archeological and historical resources that might be destroyed by the reservoir projects it funds. But it is allowed considerable discretion in determining how to fulfill its responsibility to cooperate and assist, and, in exercising this discretion, it may neither exceed the authority granted in its enabling statute nor spend its funds for purposes other than that for which

they were appropriated. Whether any particular act of assistance can be undertaken by the Board without abusing its discretion or overrunning its authority will have to be determined on a case-by-case basis. See Article 5421q, V. T. C. S.

For example, § 11.062 of the Water Code, Vernon's Texas Codes Annotated, authorizes the Board's staff to study and investigate the state's water resources in order to determine the most suitable locations for future water facilities including reservoir sites and to make estimates of the cost of such facilities. Item 26 of the Board's appropriations for fiscal 1974 and 1975 (General Appropriations Act, Acts 1973, 63rd Leg., ch. 659, p. 1786, 2043) makes funds available for "Topographic mapping, water studies and investigations." A rider attached to this provision explains that:

> "Those funds allocated the Water Development Board under the appropriation for topographic mapping, water studies and investigations shall be used for. . . other studies and investigations by the State or in cooperation or by contract with other governmental agencies, institutions or non-governmental entities. . . ." (p. 2046)

These statutory provisions give the Water Development Board both the authority and wherewithal to assist the Antiquities Committee in locating and investigating historical objects, archeological sites, etc., which might be destroyed by the reservoirs it is funding. The expense incidental to avoiding destruction of such artifacts is actually a part of the cost of constructing a reservoir, and the Board should be aware of the total cost of the facilities for the construction of which it provides funds.

## SUMMARY

Section 6 of the Antiquities Code requires a permit from the Antiquities Committee to be obtained before any historical or archeological resources located on public lands can be altered, damaged, destroyed, etc.

The Honorable Fred Wendorf, page 8 (H-250)

    While a local political subdivision planning to construct a reservoir which will affect historical or archeological resources must comply with the permit requirement, the Water Development Board need not since it only loans money for the project and does not engage in the actual construction. The Board does have a responsibility to assist the Antiquities Committee in locating, protecting and preserving historical and archeological resources, but it has a wide degree of discretion in determining how to meet this responsibility.

    The Board has been provided with funds which can be used to study the antiquities which will be affected by a reservoir project it is funding, but it may not engage in salvaging operations.

       Very truly yours,

       JOHN L. HILL
       Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee